IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:17-cv-340-GCM

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY SWATSWORTH,<br>ACDI GROUP, LLC, and<br>SOLUTIONS TO PORTFOLIOS, LLC,<br><br>Defendants. | ORDER |

**THIS MATTER** is before the Court on the Motion to Strike (Doc. No. 35) filed on January 12, 2018 by Plaintiff Federal Trade Commission. Defendants filed a response on January 26, 2018. Plaintiff filed a reply on February 1, 2018, and Defendants filed a surreply on February 15, 2018. For the following reasons, Plaintiff's Motion is granted in part, denied in part.

**I. Background**

**A. Factual Background**

Defendant ACDI Group, LLC ("ACDI") is a North Carolina limited liability corporation registered, owned, and controlled by Defendant Anthony Swatsworth ("Swatsworth"). Defendant Solutions to Portfolios, LLC ("STP") is a North Carolina limited liability corporation also registered, owned, and controlled by Swatsworth. ACDI is a debt purchasing company, and STP is a debt collection company. During the relevant time period, the two businesses operated from the same address. STP collected upon all debts acquired by ACDI, and STP has also

1

collected upon debts owned by two other entities. The finances of the two companies completely overlapped during the 2014 year.

In 2014, Swatsworth negotiated a purchase of debt portfolios through Craig Manseth of United Debt Holdings ("UDH"). Swatsworth had worked with Manseth and UDH in the past. Manseth brokered a purchase of past-due payday loans from SQ Capital, LLC ("SQ Capital"). Swatsworth knew that SQ Capital was owned by Joel Tucker, and Swatsworth told Manseth that he had heard bad things about Tucker. Manseth urged Swatsworth to sample the portfolio and told him that everything would be "Okay." Swatsworth stated that ACDI was "one of the guinea pigs to sample it and purchase it."

On July 24, 2014, ACDI purchased the portfolio, containing approximately 2,335 purported past-due payday loans, from SQ Capital for $24,812.25. The aggregate unpaid balance of the purported debts in the file was $992,490. The contract identified the seller as SQ Capital and the original lender as www.500FastCash.com ("500FastCash"). Swatsworth did not receive a bill of sale from the original lender, but he testified that it is the customary practice in the industry for brokers, such as UDH, to not normally provide bills of sale from the original lender.

STP began contacting consumers to collect on the purported debts on July 28, 2014. Immediately, Defendants experienced issues with multiple accounts. Each day, two or more purported borrowers disputed the debts and provided documentary evidence that they had repaid the loans or had never taken out a loan. Defendants collected this information and provided it to UDH. Defendants continued to contact purported borrowers from the portfolio until August 15, 2014, when Manseth sent Swatsworth an email directing him to stop contacting individuals from

the portfolio. The email stated: "Anthony- Shut whole file down. Keep what you've collected and futures. Tylor will refund on Tuesday."

Defendants retained the payments they had received from non-disputed accounts, but ceased contacting individuals from the portfolio. Defendants also received and retained forty-five additional payments after August 15, 2014 from individuals that they had contacted before Manseth instructed them to shut the file down. The last payment Defendants received was on May 29, 2015. Defendants also received a complete refund of the amount paid for the portfolio from SQ Capital by September 2014. All told, Defendants collected $30,397.29 from the 500FastCash portfolio in addition to the full refund of the purchase price.

The loan information contained in the 500FastCash portfolio that Defendants purchased was falsified. 500FastCash is a registered trademark of Red Cedar Services, Inc. ("Red Cedar"), which had engaged AMG Services, Inc. ("AMG") as the exclusive servicer for 500FastCash loans during the relevant time period. Further, the loan information in the portfolio does not match any recorded customer information from actual 500FastCash reports.

**B. Procedural Background**

Pursuant to a subpoena issued during the FTC's investigation of the 500FastCash portfolio, the FTC took Swatsworth's testimony on September 23, 2015. Swatsworth testified about the actions of Tucker, SQ Capital, and UDH. The FTC informed Defendants that they were also under investigation for their debt collection practices in March 2017.

The FTC filed its complaint in this matter on June 22, 2017, alleging that Defendants violated: (1) Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair or deceptive acts or practices in or affecting commerce;" and (2) Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading

3

representation or means in connection with the collection of any debt." The Complaint seeks a preliminary injunction, a permanent injunction to prevent future FTC Act violations by Defendants, equitable monetary relief, and costs.

Defendants, in their answer, asserted seven affirmative defenses: (1) waiver, (2) estoppel, (3) bona fide error, (4) condition of mind defense, (5) compliance with FTC, (6) lack of requisite intent, and (7) lack of knowledge.

Discovery in this matter was set to close on November 1, 2017. In their pre-discovery disclosures, Defendants identified Swatsworth as the only individual that they would use to support their claims or defenses. On August 11, the FTC specifically requested that Defendants produce "[c]all scripts used in the collection of consumer debt," "[c]ompliance policies and training materials used in the collection of consumer debt," and "[a]ll documents related to consumer complaints." The FTC also requested that Defendants "[i]dentify all personnel tasked with legal compliance regarding consumer debt collection, including but not limited to compliance with the FDCPA."

In response, Defendants produced a 132-page "STP Group Compliance Policies and Procedures" document, one page of a telephone call script for answering machines or voice mail for STP, and a PDF document of consumer complaints and the responses to those complaints. Defendants listed Swatsworth as the only individual tasked with legal compliance regarding consumer debt collection. After multiple requests, Defendants also provided a list of approximately 100 employees who worked for Defendants in 2014 and 2015. And following this Court's Order granting the FTC's motion to compel, Defendants produced contact information for those employees on November 22, 2017.

On November 16, 2017, the FTC filed a motion for summary judgment. After receiving an extension of time, Defendants responded on December 22, 2017. The FTC now moves to strike seven exhibits that Defendants attached to its December 22, 2017 response to FTC's motion for summary judgment. The FTC argues that this evidence was not disclosed during discovery and accordingly must be stricken.

## II. Discussion

Rule 37(c) of the Federal Rules of Civil Procedure provides, in relevant part, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Fourth Circuit has held that a district court should be guided by five factors in determining whether such a nondisclosure of evidence is substantially justified or harmless: "(1) the surprise to the party against whom the evidence would have been offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

The FTC has moved to strike seven exhibits from Defendants' response to FTC's motion for summary judgment as previously undisclosed evidence. The exhibits are: (1) a 55-slide PowerPoint presentation used as part of Defendants' compliance training program attached as Exhibit D to Swatsworth's affidavit (the "PowerPoint presentation"); (2) an additional page of telephone call scripts for STP employees to follow attached as Exhibit E to Swatsworth's affidavit (the "Call Script"); (3) a spreadsheet of consumer complaints and Defendants' responses attached as Exhibit H to Swatsworth's affidavit (the "Complaints Spreadsheet"); (4)

5

the affidavit of Stephan Kibler; (5) the affidavit of Angela Mahatha; (6) the affidavit of Avis Snead; and (7) the affidavit of Tari Olivia Parks. The Court will address the challenged evidence in three parts.

**A. The PowerPoint Presentation and the Call Script**

The PowerPoint Presentation and the Call Script were first disclosed to the FTC on December 21, 2017, the day before Defendants filed them as attachments to their response to the FTC's motion for summary judgment. Defendants argue that this evidence should not be excluded because it is necessary to corroborate Swatsworth's affidavit and to rebut the FTC's new allegations and evidence. The Court finds that the PowerPoint Presentation and Call Script must be excluded.

Defendants claim that the FTC raised new allegations in its motion for summary judgment. Specifically, Defendants claim that the FTC's arguments regarding consumer complaints and Defendants' compliance with FTC rules and policies regarding debt collection were not contained in the FTC's Complaint. Defendants argue that they are thus entitled to present this undisclosed evidence to rebut these allegations.

Defendants' argument is without merit. The FTC did not raise allegations of Defendants' general compliance with FTC rules and policies regarding debt collection in its Complaint because it did not need to in order to present its claim for relief. Defendants, however, raised a bona fide error affirmative defense in their answer. In order to prove a bona fide error defense, Defendants must show, by a preponderance of the evidence, that: (1) they unintentionally violated the FDCPA, (2) the violation resulted from a bona fide error, and (3) the violation occurred notwithstanding the maintenance of procedures reasonably adapted to avoid the violation. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 389 (4th Cir. 2014)

(citing 15 U.S.C. § 1692k(c)).  Thus, Defendants raised the issue of compliance procedures in their answer.

The FTC's arguments are a response to Defendants' affirmative defense; they are not new claims or allegations.  Given that Defendants bear the burden of proof for their affirmative defense at both the trial and summary judgment stage, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), the FTC may present evidence challenging the Defendants' claim of a bona fide error in its opening brief.  Further, the FTC did not surprise Defendants with any of its exhibits challenging the sufficiency of Defendants' compliance program, as they were each previously identified as documents that might be used in support of the FTC's claims or in response to Defendants' defenses.  Defendants, on the other hand, did surprise the FTC by providing the PowerPoint Presentation seven weeks after the close of discovery and five weeks after the FTC filed its motion for summary judgment.

The other factors also weigh in favor of excluding the PowerPoint Presentation and Call Script.  Given that the FTC's motion for summary judgment was already filed when Defendants produced these documents, there is no opportunity for a cure other than exclusion.  Further, Defendants have not argued that they did not previously have access to the PowerPoint Presentation, nor have they offered a valid reason for failing to disclose it.  Finally, the PowerPoint Presentation and Call Script is not the only evidence supporting Defendants' affirmative defense.  Defendants can rely on Swatsworth's affidavit and the 132-page "STP Group Compliance Policies and Procedures" document.

Thus, the Court must grant the FTC's motion to strike with respect to the PowerPoint Presentation and Call Script.

**B. The Complaints Spreadsheet**

The Complaints Spreadsheet was first provided to the FTC in its current format as an attachment to Defendants' response to the FTC's motion for summary judgment on December 22, 2017. Defendants argue, however, that this is not new evidence because the underlying information was previously disclosed, and it is thus not subject to Rule 37 sanctions. The Court agrees.

Defendants previously disclosed a consumer complaints log to the FTC as part of its September 26, 2017 discovery responses. Although Defendants failed to provide a Bates label number on the initial response document, Defendants did correct this error in its Supplemental Responses on October 16, 2017. Unfortunately, Defendants provided this log in a PDF copy of a spreadsheet that failed to present the information in a legible format. While the FTC had no obligation to attempt to piece this information together, the FTC could have followed up with Defendants or attempted to obtain a more legible copy of the original complaints log. The FTC claims that it did not follow up because it was not on notice of the importance of the complaints log. But notice was fairly provided: the complaints log was the first of three documents that Defendants provided in their initial response to the FTC's request for "all documents related to consumer complaints," and it was the only document contained in Defendants' supplemental responses to the same request.

Thus, the Court finds that the information contained in the Complaints Spreadsheet was disclosed to the FTC prior to the close of discovery. The Court accordingly denies the FTC's motion to strike with respect to the Complaints Spreadsheet.

**C. Employee Affidavits**

Defendants also attached affidavits from four employees in support of its response to the FTC's motion for summary judgment: Stephan Kibler, Angela Mahatha, Avis Snead, and Tari Olivia Parks. These witnesses were not identified by Defendants in their initial disclosures of all individuals "likely to have discoverable information" that may be used to support Defendants' claims or defenses. Nor were they identified as employees "tasked with legal compliance regarding consumer debt collection" in response to the FTC's interrogatory requests or in any supplemental disclosures made by the Defendants.

Defendants argue that three of these employees were identified on October 16, 2017, in response to the FTC's requests for the identities of all employees who worked for the Defendants in 2014 and 2015. But, their names were listed among approximately 100 other employees, with no indicia that they had any responsibility over compliance policies or that they would potentially be called as witness in this matter. The fourth, Avis Snead, was employed from 2011–2012 and was outside the scope of that request. Thus, the FTC first became aware of Avis Snead's employment when Defendants filed his affidavit in support of its response to the FTC's motion for summary judgment.

Defendants also assert the argument that their testimony is necessary to counteract new allegations and claims made by the FTC. As discussed above, the Court finds that the FTC has made no new allegations in its motion for summary judgment that would warrant the testimony of previously undisclosed witnesses. Further, these witness statements provide testimony regarding their obligations as compliance officers for Defendants, even though Defendants previously failed to disclose them as individuals "tasked with legal compliance regarding consumer debt collection." These statements are a surprise to the FTC, there is no opportunity to

cure this omission at this stage in the litigation, and Defendants have not offered a reason for failing to previously identify them.

Accordingly, the Court must grant the FTC's motion to strike with respect to these affidavits.

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion to Strike (Doc. No. 35) is **GRANTED IN PART, DENIED IN PART.** The following evidence is accordingly stricken from Defendants' response to Plaintiff's motion for summary judgment:

1. the 55-slide PowerPoint presentation used as part of Defendants' compliance training program attached as Exhibit D to Swatsworth's affidavit;
2. the second page of the telephone call scripts for STP employees attached as Exhibit E to Swatsworth's affidavit;
3. the affidavit of Stephan Kibler;
4. the affidavit of Angela Mahatha;
5. the affidavit of Avis Snead; and
6. the affidavit of Tari Olivia Parks.

**SO ORDERED.**

Signed: April 18, 2018

Graham C. Mullen
United States District Judge