**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:17-cv-340-GCM**

**FEDERAL TRADE COMMISSION,**

          **Plaintiff,**

**v.**

                                           **ORDER**

**ANTHONY SWATSWORTH,
ACDI GROUP, LLC, and
SOLUTIONS TO PORTFOLIOS, LLC,**

          **Defendants.**

      **THIS MATTER** is before the Court on the Motion for Summary Judgment (Doc. No.

24) filed on November 16, 2017 by Plaintiff Federal Trade Commission. After receiving an

extension of time, Defendants filed a response on December 22, 2017. Plaintiff filed a reply on

January 12, 2018. On April 18, 2018, this Court granted in part and denied in part Plaintiff's

Motion to Strike portions of Defendants' response. On May 16, 2018, the Court received

supplemental briefing on a specific issue, and this matter is now ripe for decision. For the

following reasons the Court grants in part and denies in part Plaintiff's Motion for Summary

Judgment.

## I.  Background

      Defendant ACDI Group, LLC ("ACDI") is a North Carolina limited liability corporation

registered, owned, and controlled by Defendant Anthony Swatsworth ("Swatsworth").[1]

---

[1] ACDI was administratively dissolved by the State of North Carolina for failing to file its annual report.
(Doc. No. 25–4, p. 6). ACDI still has open bank accounts under Defendant Swatsworth's name.

Defendant Solutions to Portfolios, LLC ("STP") is a North Carolina limited liability corporation also registered, owned, and controlled by Swatsworth. During the relevant time period, the two businesses operated from the same address. STP collected upon all debts acquired by ACDI, and STP has also collected upon debts owned by two other entities. The finances of the two companies completely overlapped during the 2014 year.

In 2014, Swatsworth negotiated a purchase of debt portfolios through Craig Manseth of United Debt Holdings ("UDH"). Swatsworth had negotiated deals through Manseth and UDH in the past. Manseth brokered a purchase of past-due payday loans from SQ Capital, LLC ("SQ Capital"). Swatsworth knew that SQ Capital was owned by Joel Tucker, and Swatsworth told Manseth that he had heard bad things about Tucker. Manseth urged Swatsworth to sample the portfolio and told him that everything would be "Okay." Swatsworth stated that ACDI was "one of the guinea pigs to sample it and purchase it."

On July 24, 2014, ACDI purchased the portfolio ("the Portfolio"), containing approximately 2,335 purported past-due payday loans, from SQ Capital for $24,812.25. The aggregate unpaid balance of the purported debts in the file was $992,490. The contract identified the seller as SQ Capital and the original lender as www.500FastCash.com ("500FastCash"). Swatsworth did not receive a bill of sale from the original lender, but he testified that it is the customary practice in the industry for brokers, such as UDH, to not normally provide bills of sale from the original lender.

STP began contacting consumers to collect on the purported debts on July 28, 2014. Immediately, Defendants experienced issues with multiple accounts. Each day, two or more purported borrowers disputed the debts and provided documentary evidence that they had repaid the loans or had never taken out a loan. Defendants collected this information and provided it to

UDH.  Defendants continued to contact purported borrowers from the Portfolio until August 15, 2014, when Manseth sent Swatsworth an email directing him to stop contacting individuals from the Portfolio.  The email stated: "Anthony- Shut whole file down.  Keep what you've collected and futures.  Tylor will refund on Tuesday."

Defendants retained the payments they had received from non-disputed accounts, but ceased contacting individuals listed in the Portfolio.  Defendants also received and retained forty-five additional payments after August 15, 2014 from individuals that they had contacted before Manseth instructed them to shut the file down.  The last payment Defendants received was on May 29, 2015.  Defendants also received a complete refund of the amount paid for the Portfolio from SQ Capital by September 2014.  All told, Defendants collected $30,397.29 from the 500FastCash Portfolio in addition to the full refund of the purchase price.

The loan information contained in the Portfolio that Defendants purchased was falsified. 500FastCash is a registered trademark of Red Cedar Services, Inc. ("Red Cedar"), which had engaged AMG Services, Inc. ("AMG") as the exclusive servicer for 500FastCash loans during the relevant time period.  No legitimate 500FastCash loans were ever sold to SQ Capital or Defendants.  And the loan information in the Portfolio does not match any recorded customer information from actual 500FastCash reports.

Pursuant to a subpoena issued during the FTC's investigation of the Portfolio, the FTC took Swatsworth's testimony on September 23, 2015.  Swatsworth testified about the actions of Tucker, SQ Capital, and UDH.  The FTC informed Defendants that they were also under investigation for their debt collection practices in March 2017.

The FTC filed its complaint in this matter on June 22, 2017, alleging that Defendants violated: (1) Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair or deceptive

acts or practices in or affecting commerce;" and (2) Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The Complaint seeks a preliminary injunction, a permanent injunction to prevent future FTC Act violations by Defendants, equitable monetary relief, and costs. Defendants answered, disputing the allegations and raising affirmative defenses.

Plaintiff now moves for summary judgment against all Defendants on both its FTC Act and FDCPA claims.

## II. Standard of Review

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a court reviews a motion for summary judgment, it draws inferences from the "underlying facts in the light most favorable to the nonmoving party." *Moore v. Winebrenner*, 927 F.2d 1312, 1313 (4th Cir. 1991). Unsupported speculation, however, is insufficient to defeat a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

When the nonmoving party has asserted an affirmative defense, that party "cannot rest upon mere allegations in an answer, but has an affirmative obligation to establish his affirmative defenses with affirmative proof." *Angel Med. Ctr., Inc. v. Abernathy*, 159 F. Supp. 2d 215, 218 (W.D.N.C. 2000). The nonmoving party must therefore "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to present sufficient evidence, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

### III. Discussion

### A. FTC Act Claim

The FTC first alleges a violation under Section 5 of the FTC Act, 15 U.S.C. § 45(a). Section 5(a) prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." *Id.* § 45(a)(i). The FTC Act allows the FTC to seek an award of restitution and other equitable relief, including a permanent injunction, to remedy such violations in federal district court. *Id.* § 45(a)(4)(B); 15 U.S.C. § 53(b).

To prove an act is deceptive in violation of Section 5(a), "the FTC must prove (1) that there was a representation; (2) that the representation was likely to mislead consumers; and (3) that the misleading representation was material." *FTC v. Ross*, 897 F. Supp. 2d 369, 381 (D. Md. 2012) (citing *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003)). In determining whether a representation was likely to mislead, a court must view the representation as a whole and evaluate its tendency to deceive a "reasonable consumer." *FTC v. Bay Area Bus. Council*, 423 F.3d 627, 635 (7th Cir. 2005); *see also POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2015) (must be likely to mislead "consumers acting reasonably"); *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006) (same). And a representation is material if it "involves information that is important to consumers such that it is likely to affect their decisions or actions." *FTC v. Loma Int'l Bus. Grp. Inc.*, No. MJG-11-1483, 2013 WL 2455986, at *6 (D.

Md. June 5, 2013) (citing *FTC v. Patriot Alcohol Testers, Inc.*, 798 F. Supp. 851, 855 (D. Mass. 1992)).

The FTC alleges that Defendants engaged in deceptive acts in violation of Section 5 by falsely representing to the individuals listed in the Portfolio that they owed a debt, and by falsely representing to those individuals that Defendants were authorized to collect on the debt. The liability for each Defendant will be assessed separately.

### i.  Liability of STP

As a threshold matter, it is undisputed that STP was the Defendant tasked with collecting on the debts in the Portfolio. Thus, the representations made to consumers were made by STP. The FTC alleges that STP made material, misleading representations in two ways: (1) by representing to the individuals listed in the Portfolio that they owed a debt, and (2) by representing to those individuals that STP was authorized to collect on the debt.

Defendants concede that both of the representations alleged by the FTC were made by STP and that both were false. And it is clear from the evidence submitted in this matter that the representations would be likely to mislead a reasonable consumer.

Consumers listed in the Portfolio were contacted in 2014 by STP and informed of an outstanding debt from four years prior, in 2010. The Portfolio records also contained sensitive information from the consumers: name, address, social security number, telephone number, bank name, and bank account number. The FTC has further presented evidence that Defendants repeatedly called certain consumers and even threatened arrest if they failed to pay. (*See* Declaration of Isabel Avello, Doc. No. 25–22). A reasonable consumer would likely be misled under these circumstances.

Indeed, several of the consumers contacted by Defendants were actually misled. While the FTC does not need to show that all consumers were deceived, *see FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009), it has offered uncontroverted evidence that a substantial minority of consumers contacted were deceived. Specifically, of the consumers Defendants contacted between July 28 and August 15, 2014, sixty-seven individuals paid Defendants a total of $30,397.79 to satisfy the false 500FastCash debts. (Doc. No. 25–29). Forty-five of these payments were received and retained after Defendants stopped working the accounts on August 15, 2014.

Defendants' misleading representations were also material. As a baseline, "[e]xpress representations that are shown to be false are presumptively material." *Loma*, 2013 WL 2455986, at *6. The FTC has shown that Defendants' representations were indeed false. Further, it is patently obvious that a representation of an outstanding financial debt—supported by records of sensitive consumer information—is information that is important enough to affect a consumer's decisions.

Because there is no genuine dispute of material fact on this issue, STP is liable under the FTC Act as a matter of law.

### ii. Liability of ACDI

The FTC also seeks liability against ACDI for the representations made by STP. Under the FTC Act, each entity in a common enterprise is liable for all other entities' misconduct. *FTC v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 462 (D. Md. 2004). The factors to be considered in determining whether the entities form a common enterprise are: (1) common control, (2) sharing of office space and officers, (3) whether business is transacted through "a maze of interrelated companies," (4) the commingling of corporate funds and failure to maintain separation of

companies, (5) unified advertising, and (6) evidence of "no real distinction" between the companies. *AmeriDebt, Inc.*, 343 F. Supp. 2d at 462 (quoting *FTC v. Wolf*, No. 94-8119-CIV-FERGUSON, 1996 WL 812940, at *7 (S.D. Fla. 1996)).

Here, the FTC has produced significant evidence that Swatsworth owns and controls both ACDI and STP, that the two businesses shared office space and are both managed by Swatsworth, that the two businesses are interrelated in how they purchase and collect on debt, and that funds between the two companies were commingled. Specifically, both businesses used the same three bank accounts, for which Swatsworth was the exclusive signatory. Further, the two businesses are so interrelated that Swatsworth first testified that ACDI and STP had the same 22 employees, only to later testify that ACDI had no employees and that the 22 employees worked for STP. Defendants do not dispute the FTC's claim that ACDI and STP are a common enterprise, nor do they offer any evidence to the contrary. Thus, the Court finds that ACDI and STP are jointly liable for each other's misconduct under the FTC Act.

Accordingly, the Court finds that ACDI is also liable under the FTC Act as a matter of law.

### iii. Liability of Swatsworth

The FTC also seeks liability against Swatsworth as an individual. An individual may be liable for an entity's unlawful acts if he "(1) participated directly in the deceptive practices *or* had authority to control those practices, and (2) had or should have had knowledge of the deceptive practices." *Ross*, 743 F.3d at 892 (emphasis in original).

Defendants do not dispute the first element, that Swatsworth participated in and had the authority to control the debt collection practices of ACDI and STP. And the FTC has presented extensive evidence supporting this element. In addition to the evidence of his authority to

control ACDI and STP mentioned above, Swatsworth was the individual who purchased the Portfolio, supervised the collection of the purported debts, and made the ultimate decision to cease collecting on the debts. Thus, this element of liability is satisfied as a matter of law.

However, Defendants argue that there is a genuine issue of material fact as to the second element, whether Swatsworth knew or should have known that the representations were deceptive. The knowledge element can be satisfied by "showing evidence of actual knowledge, reckless indifference to the truth, or an awareness of a high probability of fraud combined with intentionally avoiding the truth (i.e., willful blindness)." *Ross*, 743 F.3d at 892.

While the FTC has not proven that Swatsworth had actual knowledge that the loans in the 500FastCash Portfolio were false, the Court finds that no reasonable jury could conclude that Swatsworth did not act with at least willful blindness when STP collected on the 500FastCash Portfolio. Even when drawing all inferences from the underlying facts in the light most favorable to Swatsworth, the evidence before the Court shows that Swatsworth was the sole individual who chose to purchase of the Portfolio, supervised collection of debts in the Portfolio, and made the decision for STP to cease contacting consumers listed in the Portfolio. And "the degree of participation in business affairs is probative of knowledge," especially within a small enterprise. *FTC v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 387 (D. Md. 2009) (quoting *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 574 (7th Cir. 1989)).

First, the undisputed evidence shows that Swatsworth had doubts about the 500FastCash Portfolio even before purchasing it. Swatsworth testified that he had previously had issues with a different product affiliated with Joel Tucker (calling it "shady stuff") and said that Tucker's name "rang a bell as not a good name to do any business with." Swatsworth initially told Manseth that he wasn't sure he wanted to "touch that file," but he relented when Manseth

9

promised that attorneys were working on it to make sure that the Portfolio was "legit." After urging from Manseth, Swatsworth said he decided to be a "guinea pig" and "went out on a limb" to purchase the Portfolio.

Defendants' only defenses are that Manseth reassured Swatsworth that attorneys reviewed the file before it was sold and that Swatsworth had a good working relationship prior to the purchase of the Portfolio. Putting aside the fact that Defendants have not presented any evidence that an attorney actually reviewed the Portfolio before ACDI purchased it or that Swatsworth discussed the legitimacy of the Portfolio with said attorney, reliance on an attorney's review would not negate his responsibility to ensure that STP was not making false representations. *See Amy Travel*, 875 F.2d at 575 ("[R]eliance on advice of counsel [is] not a valid defense on the question of knowledge; counsel could not sanction something that the defendants should have known was wrong."). Reliance on Manseth's assertions alone is also no defense, as it was Swatsworth—not Manseth—who was responsible for the financial and legal obligations of STP and ACDI.

Second, Swatsworth knowingly purchased the Portfolio for a lower than normal price and did not receive an original bill of sale from the lender proving the authenticity of the Portfolio. The cost of the Portfolio was 2.5 percent of the total amount of unpaid debt, while Swatsworth testified that he typically paid closer to 10 percent for other payday loan debt portfolios. Swatsworth testified that he believed the price was low because the charge-off dates were older than usual and the Portfolio had been previously shelved by the lender, and that it was not a common industry practice to receive an original bill of sale. Even construing the evidence in the light most favorable to Swatsworth, a reasonable jury could not find that Swatsworth was on notice of the inherent risk involved in purchasing the Portfolio.

Third, it is undisputed that Swatsworth had direct knowledge of the high volume of disputed loans throughout the collection period. "Courts have held that defendants have knowledge of the deceptive [practice] where they . . . were undoubtedly aware of the avalanche of consumer complaints." *Ross*, 897 F. Supp. 2d at 385 (citing cases). Swatsworth testified that each day, two or more purported borrowers disputed the debts, which was a "higher than normal number." In fact, all told, Defendants' own statements show that 30–45 individuals disputed the loans, while 67 did not. This ratio is vastly out of proportion to STP's average loan collection practice, where Swatsworth testified that most portfolios would receive only one or two disputes for every 2,000 accounts.

Swatsworth also had direct knowledge that the consumer complaints were justified. Swatsworth personally reviewed documentary information from consumers showing that they never received a loan or had previously paid it back. On August 5, 2014, Swatsworth sent copies of two bank statements to Manseth that showed the consumers did not receive a deposit for the month the loans were supposedly disbursed. Nonetheless, Swatsworth instructed his employees to continue to contact consumers and attempt to collect on the debts for ten more days. Swatsworth only ceased the collection practices when Manseth sent him an email directing him to stop contacting individuals from the Portfolio and promising a refund of the purchase price. But, under Swatsworth's instruction, STP retained the payments that some consumers had made on the 500FastCash loans and continued to receive payments from consumers contacted prior to August 15, 2014.

Defendants argue that Swatsworth did not have the requisite level of knowledge because he relied on Manseth's instructions, he was never told that the loans in the Portfolio were determined to be false, and he never received a cease and desist letter ordering him to cease

collecting on the loans in the Portfolio. Rather, Defendants contend that Swatsworth did not learn of the fraud until contacted by the FTC a full year later. Assuming these factual statements are true, this evidence does not rescue Swatsworth from the willful blindness standard. Manseth was not responsible for the legal compliance of STP and ACDI, nor was he Swatsworth's superior in any way; rather, he was the broker for the deal. Swatsworth, on the other hand, was responsible for the representations made by STP, and he was well aware of the complaints throughout the process.

To summarize, Swatsworth had initial doubts about the Portfolio because it was affiliated with Joel Tucker, and he purchased it at a steep discount in order to test it out. Yet after receiving an avalanche of complaints that the debts were false—including at least two that were supported with documentary evidence—he continued to instruct his employees to collect on the debts. And even after Manseth told him to shut the file down, Swatsworth retained all payments that had been made and instructed his employees to continue to receive and process payments made under the Portfolio. Construing this evidence in the light most favorable to the Defendants, the Court finds that no reasonable jury could find that Swatsworth did not act with at least willful blindness or reckless indifference to the truth.

Thus, Swatsworth is individually liable under the FTC Act as a matter of law.

**B. FDCPA Claim**

The FTC's second count alleges a violation under Section 807 of the FDCPA, 15 U.S.C. § 1692e(2)(A). The elements for proof of a violation of the FDCPA are generally: "(1) the plaintiff is a 'consumer' within the meaning of the statute; (2) the defendant collecting the debt is a 'debt collector' within the meaning of the statute; [and] (3) the defendant has violated by act or omission a provision of the FDCPA." *Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp.

411, 414 (E.D. Va. 1997).  The first element need not be proven in this case because the FTC is authorized to enforce compliance of the FDCPA.  15 U.S.C. § 1692*l*(a).

The FTC alleges that Defendants violated Section 807 through the same conduct addressed above with respect to liability under the FTC Act.  The liability for each Defendant will be assessed separately, and then the Court will turn to the affirmative defense raised by the Defendants.

### i.  Liability of STP

First, it is clear that STP is a "debt collector" within the meaning of the FDCPA.  The FDCPA's definition of "debt collector," in relevant part, includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6). Accordingly, a corporate defendant may be a debt collector if either: (1) the "principal purpose" of the business is the collection of debts, or (2) the business regularly collects or attempts to collect on debts owed to another.  *Id.*  The Supreme Court has held that the second class of debt collectors excludes entities that purchase debts originated by someone else and seek to collect on the debts for their own account.  *Henson v. Santander*, -- U.S. --, 137 S. Ct. 1718, 1721–22 (2017).

Here, based on Defendants' own admissions, it is clear that STP is a debt collector under either definition of debt collector.  STP has admitted that its primary purpose is debt collection and that it collected on debts owed to ACDI and to other companies.  Defendants' only argument in opposition is that the FTC has failed to present evidence that STP used an "instrumentality of interstate commerce or the mails" in its debt collection practices, as required by 15 U.S.C. §

1692a(6).  However, the FTC has presented evidence that STP made telephone calls to consumers.  (Doc. No. 25-2).  The use of a telephone, even to initiate intrastate calls, constitutes an instrumentality of interstate commerce.  *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999).

Second, STP's conduct violated the FDCPA.  Section 807 of the FDCPA states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The "false representation" of "the character, amount, or legal status of any debt," constitutes a violation of Section 807.  15 U.S.C. § 1692e(2)(A).  As explained above, Defendants concede—and the evidence makes clear—that STP made false representations to consumers in two ways: (1) by representing to the individuals listed in the 500FastCash Portfolio that they owed a debt, and (2) by representing to those individuals that STP was authorized to collect on the debt.

Thus, STP is liable under the FDCPA as a matter of law.

**ii.  Liability of ACDI**

First, ACDI is also a debt collector.  While ACDI does not meet the FDCPA's second definition of a debt collector, as the debts collected on were for its own account, ACDI does fall into the "primary purpose" category.  ACDI has admitted on several occasions that its primary purpose is debt purchasing and debt collection.

Second, ACDI is liable for the FDCPA violations conducted by STP.  The general rule under the FDCPA is that "an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf."  *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404–05 (3d Cir. 2000).  Because ACDI is a

debt collector within the meaning of the FDCPA and STP carried out collection on behalf of ACDI, ACDI is vicariously liable for the misrepresentations made by STP.

Thus, ACDI is also liable under the FDCPA as a matter of law.

### iii.  Liability of Swatsworth

The Court finds that Swatsworth is not liable under the FDCPA as a matter of law because a threshold requirement for liability under the FDCPA is that the defendant must be a debt collector, and the FTC has conceded that Swatsworth is not individually a "debt collector" under the statute.  *See* 15 U.S.C. § 1692e ("A *debt collector* may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." (emphasis added)).

A survey of circuit court case law stemming from private FDCPA causes of action supports the position that an individual may not be liable under the FDCPA unless he or she qualifies as a debt collector under the statute.  The Seventh Circuit has specifically held that,

> Because such individuals do not become 'debt collectors' simply by working for or owning stock in debt collection companies, we held that the Act does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced. . . . Individuals who do not otherwise meet the statutory definition of 'debt collector' cannot be held liable under the Act.  As we mentioned in *White*, FDCPA suits against the owners of a debt collection company who are not otherwise debt collectors are frivolous and might well warrant sanctions.

*Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000).  The Sixth Circuit did not interpret individual liability under the FDCPA quite so narrowly, but still held that "subjecting the sole member of an LLC to individual liability for violations of the FDCPA will require proof that the individual is a 'debt collector,' but does not require piercing of the corporate veil."  *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 437–38 (6th Cir. 2008).  The only cases where a non-debt collector has been found liable for the

actions of a debt collector are the in the context of a limited partnership, where liability is inherently imputed to general partners. *See Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 405 n.29 (3d Cir. 2000); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F.3d 872 (7th Cir. 2000) ("The flaw is that partners, unlike corporations, do not enjoy limited liability. The liability of a partnership is imputed to the partners, and so the plaintiff was entitled to sue the partners as well as the partnership.").

Similarly, the majority of district court decisions that this Court found that assess individual liability under the FDCPA in private causes of action require the individual to qualify as a debt collector before liability can attach. *See, e.g.*, *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 778–79 (E.D.N.C. 2011) (finding that employee who took affirmative actions in the collection activities could be personally liable as a "debt collector"); *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1074 (E.D. Cal. 2008) (finding that individual defendant's conduct qualified him as a debt collector and thus exposed him to personal liability under the FDCPA); *Krapf v. Prof'l Collection Servs., Inc.*, 525 F. Supp. 2d 324, 327 (E.D.N.Y. 2007) (summarizing cases and stating that "[w]hile not adopting a respondeat superior theory of liability, these courts have held that personal involvement can lead to a finding that an individual is a 'debt collector' within the meaning of the Act, and thereby render him liable for its violation"); *Musso v. Seiders*, 194 F.R.D. 43, 46 (D. Conn. 1999) ("Individual defendants, such as directors or officers of a collection agency, may be held personally liable under the FDCPA. To establish an individual defendant's personal liability, a plaintiff must first establish that the individual is a 'debt collector.'"); *Teng v. Metropolitan Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994) (finding employees liable because they were individually "debt collectors" within the meaning of the FDCPA).

The FTC argues, however, that individual liability is different when the FTC brings the cause of action. The FTC draws support for its argument from the provision in the FDCPA that provides the FTC with enforcement power over FDCPA violations, which states, in relevant part:

> For purposes of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act (15 U.S.C. § 41 et seq.), a violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of that Act. All of the functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Federal Trade Commission to enforce compliance by any person with this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act, including the power to enforce the provisions of this subchapter, in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.

15 U.S.C. § 1692*l*(a).

The FTC argues that because a violation of the FDCPA is a violation of the FTC Act, and because the FTC Act imposes liability on individuals who meet the requisite level of control and knowledge under *Ross*, therefore the FDCPA allows for the same liability when enforced by the FTC. This argument is not supported by *Ross* or the language of § 1692*l*(a). First, the Fourth Circuit did not discuss the applicability of that standard to FDCPA violations in *Ross*. *See* 743 F.3d 886. And second, the Court finds no support in the language of § 1692*l*(a) to expand the scope of liability under the FDCPA just because the FTC is the plaintiff. Rather, § 1692*l*(a) merely allows *existing* violations of the FDCPA to be prosecuted by the FTC using the same authority and remedies available to the FTC in the FTC Act.

The FTC also supports its position by citing to a case out of the Northern District of Georgia, *FTC v. Williams, Scott & Assocs. LLC*, No. 1:14-CV-1599-HLM, 2015 WL 12856779 (N.D. Ga. 2015). In *Williams*, the district court held that an individual who exercised the requisite level of knowledge and control could be liable under the FDCPA when the FTC brought the suit under § 1692*l*(a). *Id.* at *14. However, the court merely stated that the

defendant's argument "might be correct if this action were one brought by private plaintiffs," but fails because "[t]he FDCPA, however, allows the FTC to enforce compliance with the FDCPA." *Id.* at *14 n.9. The Eleventh Circuit affirmed the decision without explaining how the FTC's authority to *enforce* compliance with the FDCPA under § 1692*l*(a) expands the *scope* of who qualifies as a violator of the FDCPA. *See FTC v. Williams, Scott & Assocs., LLC*, 679 F. App'x 836 (11th Cir. 2017) (per curiam).[2]

To the extent that *Williams* holds that an member or employee of an LLC may be liable even if they are not a debt collector within the meaning of the FDCPA, this Court disagrees. Rather, the Court finds that nothing in the FDCPA indicates that a different standard of liability for individual defendants applies in private suits than in suits brought by the FTC.

A court may grant summary judgment on an issue for a nonmoving party under Rule 56 of the Federal Rules of Civil Procedure after "giving notice and a reasonable time to respond." After briefing was completed on the Motion for Summary Judgment, the Court ordered supplemental briefing to address the question of "whether each Defendant qualifies as a 'debt collector' for purposes of the FDCPA." (Doc. No. 50). The FTC responded and conceded that Swatsworth is not a debt collector under the FDCPA. (Doc. No. 52). Accordingly, all parties were given adequate notice and opportunity to brief this issue, and the Court finds that there is no factual dispute about Swatsworth's status. Thus, because the FTC has conceded that Swatsworth is not a debt collector within the meaning of the FDCPA, and one must be a debt collector in order to be liable under the FDCPA, the Court finds that Swatsworth is not liable under the FDCPA as a matter of law.

---

[2] It is worth noting that both the district court and the Eleventh Circuit also found that the individual defendant had directly participated in the debt collection by making collection calls using a false name. Although neither stated that he was a "debt collector" under the FDCPA, this finding shows that he was more than just exercising supervisory control.

### iv. Bona Fide Error Affirmative Defense

Defendants also raise an affirmative defense supporting their argument that they should not be liable under the FDCPA. The FDCPA specifically provides that

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). In order to avoid liability under this defense, a debt collector bears the burden of showing that "(1) it unintentionally violated the FDCPA; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 389 (4th Cir. 2014). This bona fide error defense only applies to mistakes of fact, not mistakes of law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010).

The FTC argues that the bona fide error defense does not apply to actions instituted by an agency. In support of this argument, the FTC relies on only one unpublished decision from the District of Ohio in 1983, where the court held that the "defense applies only in actions instituted under 15 U.S.C. § 1692k authorizing actions by individuals for damages." *United States v. First Fed. Credit Control, Inc.*, No. C79-2274, 1982 U.S. Dist. LEXIS 17964, at *18 (D. Ohio Mar. 11, 1983). The FTC has not cited any other authority supporting this argument.

The plain language of § 1692k(c), however, specifically states that the defense applies to "any action brought under this subchapter." And "this subchapter" clearly refers to actions brought under Title 15, Chapter 41, Subchapter V of the U.S.C.A., labeled "Debt Collection Practices." Included within Subchapter V is § 1692*l*, labeled "Administrative Enforcement," which gives the FTC the authority to bring causes of action to enforce violations of the FDCPA. Thus, the Court finds that the bona fide error defense applies to agency enforcement actions.

Although ACDI and STP are able to raise the bona fide error defense, the Court finds, as a matter of law, that they have not met their burden of production and thus their affirmative defense fails as a matter of law. There is a genuine dispute of material fact as to the first element, as Swatsworth has presented testimony regarding his lack of intent to violate the FDCPA. However, it is clear that there is no genuine dispute of material fact regarding the second element, that the FDCPA violation was a result of a bona fide error.

"Bona fide" is defined as "made in good faith; inadvertently; without fraud or deceit." *Black's Law Dictionary* (10th ed. 2014). "Good faith" includes a "faithfulness to one's duty or obligation." *Id.* A misrepresentation made by a defendant "solely as a result of inaccurate information provided by its client would be a bona fide error." *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 646 (D. Md. 2010). However, a defendant is entitled to reasonably rely on its client's word only "where there is a colorable basis for the claim" and where the defendant does not otherwise have notice of the error. *McLean v. Ray*, No. 1:10-cv-456, 2011 WL 1897436, at *6–7 (E.D. Va. May 18, 2011), *aff'd*, 488 F. App'x 677 (unpublished), *cert. denied*, 568 U.S. 1144 (2013). Further, "in the face of a discoverable error, a debt collector cannot invoke the bona fide error defense." *Grant-Fletcher v. McMullen & Drury, P.A.*, 964 F. Supp. 2d 514, 529 (D. Md. 2013).

Here, as explained above, ACDI and STP knew or should have known that there was not a colorable basis for the purported debts after they knowingly purchased the Portfolio from a disreputable source and received an unusually high number of disputed claims. Nonetheless, they continued to solicit and collect on the debts. Thus, the FDCPA violations were not solely a result of a bona fide error, and Defendants' affirmative defense fails as a matter of law.

## C. Remedy

In summary of the issues of liability, the Court finds as a matter of law that (1) ACDI, STP, and Swatsworth are all liable under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); (2) ACDI and STP are liable under Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e; and (3) Swatsworth is not liable under Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e.

As a remedy for these violations, the FTC requests three forms of relief: (1) a permanent injunction; (2) monetary relief; and (3) monitoring and compliance provisions. The Court will address the disputes related to Plaintiff's requested relief at the hearing set in this matter for August 23, 2018.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART, DENIED IN PART.** The Court will rule on the remedy for the found violations following the hearing set for August 23, 2018.

**SO ORDERED.**

Signed: August 22, 2018

Graham C. Mullen
United States District Judge